ECHEVARRÍA ET AL *v.* ALERS ET AL.

APPEAL from the District Court of Mayagüez.

No. 11.—Decided February 25, 1905.

PARTITION OF INHERITANCE—CREDITORS—RESCISSION.—The provisions of section 1000 of the Civil Code are applicable only to those cases in which the heirs have accepted the inheritance under the benefit of inventory.

ID.—PRETERITION OF CREDITOR.—The provisions of section 1047 of the Civil Code are not applicable to cases in which a creditor of one or more of the heirs may have been excluded.

ID.—PARTITION MADE IN FRAUD OF CREDITORS.—A partition of inheritance made in fraud of creditors may be rescinded when it appears that such creditors have no other means of recovering the amount due them, and that the debtor or heir has no property other than that which has been awarded to him by virtue of such partition.

The facts are stated in the opinion.

*Messrs. Arnaldo* and *García Cuervo,* for appellants.

*Mr. Eduardo Acuña,* for respondents.

MR. JUSTICE MACLEARY delivered the opinion of the court.

Félix Echevarría held against Isabel Alers Beauchamps, and Segundo Esteves Alers, a mortgage for 5,321.43 *pesos,* upon the partition of the undivided Estate of Venancio Este-

ves y Serrano, which belonged to them as widow and heir of the said estate. This amount was payable in annual instalments beginning on the 1st of March, 1895, and ending on the 1st of March, 1899. The heirs and immediate creditors of the Estate of Venancio Esteves, on the 4th of March, 1901, drew up before a notary public a writing of partition in which they distributed among themselves the whole of the estate, without notice to Echevarría or his participation in the same.

After the death of Félix Echevarría y Contí, and the partition of his estate, Mrs. Felícita Maissonave de la Rosa became the owner of the mortgage herein mentioned, and assigned the same to José Echevarría, Mrs. Ignacia Echevarría and Mrs. Herminia Echevarría y Maissonave, said transfer being duly registered in the Registry of Property of Aguadilla. The plaintiffs not being satisfied with the partition of the estate, brought this suit to rescind the same and set it aside, alleging that the most worthless portion of the property inherited from Venancio Esteves had been fraudulently adjudicated to the widow, Doña Isabel, and the heir, Don Segundo, giving the same a fictitious value of 10,915.20 *pesos* provincial money, equivalent to $6,599.12 in American gold, while the true value thereof amounted to only $3,204 and that thus they had been defrauded of more than one-half of the portion rightfully belonging to them, and that they were not able in any manner to collect the amount of their credit.

The suit was prosecuted in the regular order, and after the taking of testimony and all other necessary proceedings, on the 24th of December, 1903, the District Court of Mayagüez rendered the following judgment:

"In the city of Mayagüez on the twenty-fourth of December, nineteen hundred and three. Having had the oral hearing in this civil suit, prosecuted between parties on the one side as plaintiff first by Mrs. Felícita Maissonave y de la Rosa, property owner and resident of Aguadilla; continued later by Mrs. Herminia, Mrs. Ignacia and Mr. José Echevarría y Maissonave, property owners, residents of the

same city of Aguadilla, as assignees of Mrs. Felícita Maissonave, represented by the attorney José de Diego, and on the other side, as defendants, Mrs. Isabel Alers, in her own right, and representing her infant daughter, Rafaela Esteves y Alers, Mr. Segundo, Mrs. Monserrate and Mrs. Mercedes, of the surnames last mentioned, property owners, residents of San Sebastián, defended by the attorney Alfredo Arnaldo, Esq., and against the dissolved commercial company Plaja & Bravo, Víctor Martínez y Martínez, residents of this city, Mrs. María Santoni de Aramburu, resident of Añasco, Merced Ortiz, Juan López y Nieves, and as the representative of the extinguished Company of L. Orfila & Co., Lorenzo Orfila y Hernández, resident of San Sebastián in default in this proceeding for rescission of partitions.

''Finding: That by deed No. 125 authenticated by the former notary public of San Sebastián, Víctor Martínez, Esq., on the 30th of April, 1894, Mrs. Isabel Alers y Beauchamp and Segundo Esteves Alers, acknowledged their indebtedness to Félix Echevarría y Conti, resident of Aguadilla, in the sum of $5,321.43 of the money then in circulation, of which amount the executrix of Venancio Esteves y Serrano was debtor, and which debt was assumed by the mother and son, giving a promissory note for the same, binding themselves to pay the said amount with interest at the rate of 1 per cent. per month for one year, the said interest amounting to 638 *pesos* and 57 cents, making a total debit of 5,960 *pesos,* which they agreed to liquidate by annual payments of one-fifth of the amount, the first amounting to 1,192 *pesos,* beginning on the first of March, 1895, and the subsequent payments to be made on the same day and month of 1896 to 1899, the said amounts drawing interest at the rate agreed upon of 1 per cent per month, which should be paid on the expiration of the respective annual periods, on the total indebtedness pending at the time of payment, the said amounts being placed in the residence of the creditor, Mr. Echevarría, in good gold money or silver of legal circulation, and as a guarantee of the said debt and interest on the same, besides 2,000 *pesos* fixed to cover expenses and costs of collection if the same should be necessary to be made judicially, Mrs. Isabel Alers and her son Segundo Esteves gave a mortgage on the undivided portion of the real estate which they inherited at the death of their father, Venancio Esteves Serrano, at the same time mortgaging the tract of land of which she (Doña Isabel) was the sole owner, and distributing the encumbrance in the following manner: 386.70 *cuerdas,* which forms a part of the estate called 'Monserrate,' belonging to the inheritance left by Venancio Esteves y Serrano, together with the buildings on

the same, to serve as a guarantee for 5,960 *pesos* of the debt, and interest to the first of March, 1895, and interest from this date forward; another tract of 80 *cuerdas* of the same inherited credit as a guarantee for 1,500 *pesos,* a part of the amount fixed for costs; 45.50 *cuerdas,* private property of Mrs. Isabel Alers as a guarantee for the remaining \$50 fixed to cover costs, which instrument is registered in the Registry of Property of Aguadilla under date of February 3, 1895.

"Finding: That on the death of Félix Echavarría y Conti, a distribution of the property was proceeded to, adjudicating to Mrs. Felícita Maissonave y de la Rosa the mortgage obligation constituted by Mrs. Isabel Alers y Beauchamps and her son Mr. Segundo Esteves y Alers, according to instruments contained in the protocol and authenticated by Notary Public Juan Mercader y Rodríguez of Aguadilla.

"Finding: That after the commencement of this suit, on the 12th of January of the present year, before the said notary public Mercader, Mrs. Felícita Maissonave y de la Rosa assigned to José, Mrs. Ignacia and Mrs. Herminia Echevarría y Maissonave, the aforementioned credit, the same being registered in the Registry of Property of Aguadilla on the twenty-fourth of March of the current year.

"Finding: That on the 4th of March, 1901, the notary public of this city, Mr. Alfredo Arnaldo y Sevilla, by instrument No. 89, proceeded to place in the protocol the divisory transactions of the property left by Mr. Venancio Esteves y Serrano, taking an inventory, as appears from the said partition, of the property remaining at the death of the said Venancio Esteves y Serrano, among which appears the Monserrate estate, situated in ward of Culebrinas, in Sonador, of the municipality of San Sebastián, composed of two parts, one containing 468.618 *cuerdas,* with the boundaries established, the buildings described, a dwelling house of two stories, and two others, with the debts specified, placing value of the said properties as appears from the division, adjudicating to the creditors property for the payment of their respective credits, to Mrs. Isabel Alers y Beauchamps 9,096 *pesos* for her share of the property acquired during marriage, and for the inheritance of her son Ventura Esteves, 1,819 *pesos* and 20 cents, all provincial money; and to Segundo y Alers, 1,019 *pesos* and 20 cents, of the same money; giving to the widow as her half of the property acquired during marriage, 106.89 *cuerdas* of land taken from the second part described of the *hacienda* 'Monserrate,' with the boundaries expressed, and which was assessed at the same price as

the credit belonging to her, adjudging another 38 *cuerdas* for the payment of the inheritance of Ventura Esteves, and to Segundo Esteves y Alers a house was given in payment, the said house being assessed at $150, provincial money, and 30.96 *cuerdas* which were also taken from the *hacienda* 'Monserrate,' and which were assessed at 1,669 *pesos* and 20 cents; neither the name of Mrs. Felícita Maissonave nor her father being mentioned in the division.

"Finding: That on the grounds above set forth, Mrs. Felícita Maissonave y de la Rosa, further stating that *Don* Venancio Esteves y Serrano died having made a will in which he included as heirs Mrs. Monserrate, Mrs. Mercedes, Mrs. Rafaela, Mr. Segundo and Mr. Ventura Esteves y Alers, the legitimate children of the deceased in his marriage with Mrs. Isabel Alers y Beauchamps, the widow and her son Mr. Segundo Esteves, acknowledged the debt of $5,311.43, which their father, Mr. Venancio Esteves, contracted with Mr. Félix Echavarría, as has already been said, and the terms designated in the instrument having expired, Mrs. Felícita Maissonave commenced summary proceedings for the collection of the mortgage credit, which proceeding had to be suspended after the abandonment of the public sale, on account of it being known that Mrs. Isabel Alers and her son Mr. Segundo conspired with the other heirs of Venancio Esteves y Serrano, without advising, and without the least intervention of Mrs. Felícita, in whose favor the first two had mortgaged their undivided interest of the property acquired during the marriage, and by inheritance respectively, they effected the division of the property left on the death of Mr. Esteves y Serrano, adjudicating to the widow Alers y Beauchamps, and to the heir Mr. Segundo Esteves, the most worthless part of the property, placing upon the same a fictitious valuation, which in reality is not half of what legitimately belongs to the widow and the above-mentioned heir, nor half even of the amount of the debt owed by the deceased, which Mrs. Alers and Mrs. Esteves acknowledged and assumed as theirs, under a mortgage guarantee of their respective shares in the said property; adding that to the widow Mrs. Isabel, in payment of 9,096 *pesos*, provincial money, to which sum, in accordance with the will, her share of the property acquired during the marriage, amounts, the following adjudication was made: 117 *cuerdas* of land taken from the *hacienda* 'Monserrate,' and to the heir Segundo Esteves a house and 30 *cuerdas* of land, and to the remaining heirs property was adjudicated at the expense of the two above mentioned, which maliciously, and fraudulently to Mrs. Felícita Maissonave, more than covered the schedule; while Mrs. Isabel

and Mr. Segundo Esteves received two pieces of unproductive land, with a miserable hut, the value of which is far less than the false valuation under which the said property appears in the testamentary execution, secretly arranged to diminish and annul the guarantee given to Mrs. Maissonave, all of the creditors receiving sufficient property to cover the amount of their credits, without the appearance of the name of Mrs. Felícita Maissonave in the testamentary execution, from which it was inferred [the record does not say who inferred] that Mrs. Felícita Maissonave y de la Rosa, in whose favor the undivided shares of the property acquired during the marriage of Mrs. Isabel Alers were mortgaged, and of Mr. Esteves for his legitimate share in the testamentary execution of Mr. Venancio Esteves y Serrano was not cited nor offered an opportunity to intervene in the testamentary transaction; that no mention whatever was made in the said execution of the credit which in order to repay the widow Mrs. Alers and the heir Mr. Segundo, they accepted as their own, and which creedit was derived from the inheritance; that the property adjudicated to Mrs. Isabel Alers for property acquired during marriage, and to Mr. Segundo Esteves as his legitimate (property), given a fictitious valuation in the inventory, do not cover the real value corresponding to the said shares in a just division; and, finally, that a fraudulent transaction had been carried into effect in the testamentary execution, which amounts to more than half of the value of the said credit in favor of Mrs. Maissonave, which defraudation she opposed in a civil action, without prejudice to her right to institute, in due time, a criminal action, it being well to state that the said defraudations still exist, counting the smallest guarantee which is offered to the creditor Mrs. Maissonave by the *finca* mortgaged by Mrs. Isabel Alers, as her exclusive property, and that the debtors have no other property than the above mentioned with which to respond to the payment of the debt; and citing articles 399, 403, 1073, 1083, 1076, 1291, paragraph 3d, 1299 of the Civil Code, and rule 63 of General Orders No. 118, series of 1899, and concluded by requesting that after the necessary proceedings a judgment be rendered declaring the division rescinded, of the property left at the death of Venancio Esteves y Serrano, which partition was recorded in the protocols of the notary public Alfredo Arnaldo under date of the fourth of March of last year, in order that a new division might be effected, in which the mortgage creditor Mrs. Felícita Maissonave y de la Rosa might intervene, and in which the legal and equitable distribution of the same among the debtors and heirs might be made, with special

.condemnation of costs against any party who might oppose the same.

"Finding: That the complaint having been delivered in order that the same might be answered within the term of twenty days, in which time an appearance should also be made, there appeared Mrs. Monserrate, Mrs. Mercedes, and Mr. Segundo Esteves y Alers and Mrs. Isabel Alers y Beauchamps, who at the same time represents the infant Rafaela Esteves y Alers, opposing the complaint, and after accepting various facts contained in the same, set forth: that in the division carried into effect at the death of Mr. Venancio Esteves y Serrano, there had been no scandal nor fraud, and that the legal condition imposed by the creditors on one or more of the heirs have been complied with, before the creditors of the one from whom the hereditary rights arise, in the partition; in view of the fact that the property inherited was valued at 57,000 *pesos*, and the debts amounting to 38,088 *pesos*, the first thing done was the payment made of the debts, distributing the remaining 18,190 *pesos* among the heirs, in the manner and form which appears from the division made; that the extraordinary and scandalous thing would have been that the plaintiff, who is the creditor only of the widow and one heir, should have received as much as she wished of the inherited property, over the heads of the creditors of the one from whom the inheritance came and of the legitimate creditors of the other heirs who owe her nothing; it is not true that the heirs conspired to defraud the plaintiff, nor that in the division the most worthless property was adjudicated to the widow and the heir Mr. Segundo Esteves, and the properties adjudicated to the other heirs were of an equal value, giving the widow property in payment to cover her credit in the property acquired during marriage, property which in her case, as well as in the case of the other heir, Mr. Segundo Esteves, much more than covered the amount which they owed to the plaintiff; that it should be borne in mind that Mr. Venancio Esteves y Serrano left, at his death, $4,000 in currency, of which the widow and the heir Mr. Segundo received the benefit for their own account, and even though they were demanded to be returned to the heirs, they were never returned, for which reason that amount should have been taken into account in the division, and it should have been deducted from the amount adjudicated to the widow and the said heir, which was not done, and in view of which the credits of both were increased, this being the manner in which they have conspired to defraud; that it had been more than eight years since the heirs had commenced to arrange the division, and although at first none of the creditors wished to accept

land in payment of their credits, they finally did accept on different dates the schedule which was made for the payment of the credits, at the division; that Mr. Merced Ortiz and Mr. Juan López Nieves, ten years ago accepted their schedule, and it had been ten years since the same have been in possession of the land adjudicated; Messrs. L. Orfila & Company accepted four years ago, and since that time have been in possession of the property adjudicated to the same; and the other creditors accepted their schedules at the time of the division, and since the said division was effected they have been in possession of their respective properties which were adjudicated to them; but neither Mr. Félix Echevarría, nor his heirs, nor his widow, have accepted anything except to collect in money, and interest on the same, and the amount which the widow and heir of Mr. Venancio Esteves owed him, and when they seemed to wish to settle, they asked 250 *cuerdas* of their selection of the *hacienda* 'Monserrate,' and as neither the widow nor the heirs, both debtor, owned that much property, there was nothing left to be done except the division of the property of Mr. Venancio Esteves in the manner in which it was effected, it being made to appear that before making the said division the heirs advised the plaintiff that they were going to effect such division, and made every offer possible to make, but no such offer was accepted, on the ground that the division had not been inscribed in the Registry of Property of Aguadilla; that it was not true that the selling price of the property adjudicated to the creditors' would cover the amount of their respective accounts, because to-day nothing has any price, and it is most probable that if the creditors wished to realize on the *fincas* adjudicated, they would not be able to find a purchaser who would offer even half of the amounts of their credits, and the same condition prevails in regard to the property adjudicated to the widow and to the heirs in the division of the property; and while not one of the creditors of Mr. Venancio Esteves y Serrano has collected from his heirs any interest whatever on his credit, on the other hand the interest on the credit which the plaintiff claims exceeds the amount of the debt; and citing in support of his right the two principles that when an action for recission is founded on fraud, it is necessary that such fraud be shown to exist, and that the costs should be taxed against the litigant whose claims were entirely unfounded; and concluded by praying that judgment be duly rendered declaring the action not well founded, and condemning the plaintiff to the payment of the costs.

"Finding: That the other parties to this suit did not appear to

answer the complaint, accusing the same of being in default, which condition for them has continued to exist to the present moment.

"Finding: That the day being set for the appearance, the parties to this litigation being present at the proceedings, proposed evidence which was admitted by the court, and among such evidence the testimony of experts, which was accepted before the presiding judge, the surveyor proposed being Vicente Viñas, a resident of Aguadilla, Sabás Honoré, of this city, and the engineer, Mr. Ricardo Skerret, also a resident of this city.

"Finding: That Mrs. Isabel Alers, according to certificate of the secretary of the court, instituted proceedings in the now extinguished *Juzgado* of Aguadilla for acquittance and respite, presenting a list of creditors amounting to 52,655 *pesos* and 80 cents.

"Finding: That according to another certificate of the secretary of the court, Mrs. Felícita Maissonave instituted summary proceedings against Mrs. Isabel Alers and Mr. Segundo Esteves, from which she withdrew with a view to prosecuting a new claim relating to the said suit, and the court declared her as withdrawn to her prejudice.

"Finding: That the day being set for the oral hearing, all the evidence was heard, the experts ratifying their written opinion, which was ordered to be attached to the record, and answered that they had made the report signed by the three, from which it appeared that they examined the properties mentioned in the record and mutually agreed on the valuation of the first portion consisting of 460 *cuerdas* at $27,537, which gives an average of 51 *pesos* per *cuerda;* that the second portion consisting of 286 *cuerdas* they valued at $5,936 and the buildings at $3,540, which makes a total of $37,013; that the 106 *cuerdas* adjudicated to Mrs. Isabel Alers had been valued separately at $2,236, and the 38 *cuerdas* adjudicated to the same lady, at $1,200; that the 30 *cuerdas* and the house belonging to Mr. Segundo Esteves were valued at 928 *pesos,* and $40, respectively; that of all of the lands belonging to the property which is the object of this investigation, the poorest are those adjudicated to the said Mrs. Alers and her son Mr. Segundo Esteves, and which are unfit for cultivation; and that the present valuation is the same as that of 1901, upon all of which points the experts agreed in fixing the value of the lands adjudicated to Plaja y Bravo at $2,400, the lands adjudicated to Orfila & Company at $1,200, each *cuerda* being valued at $120, and the lands of Mrs. María Santoni de Aramburu at $11,120, which gives an average of $56 per *cuerda.*

"Finding: That the witnesses Mr. Luis Obergh, Mr. Emilio Maza-

rredo, and Mr. Adolfo Molinari, as well as the other witnesses appearing in the oral trial, testified in the manner shown in the record thereof, Mrs. Herminia Echevarría acknowledging the signature and rubric to a letter appearing on folio 174, and which the defendant produced as evidence in her behalf.

"Finding: That the parties to the litigation having presented their allegations, to-day was set for voting upon the judgment, which was unanimously rendered by the judges.

"Finding: That the provisions of the (law) of procedure have been duly complied with in these proceedings.

"Mr. James A. Erwin delivering the opinion of the court.

"Concluding: That the debtor Mr. Venancio Esteves y Serrano being substituted by his widow Mrs. Isabel Alers, and the son of their marriage Mr. Segundo Esteves y Alers, in the credit which the said primitive debtor constituted in favor of Mr. Félix Echevarría y Conti, the question to be decided in this suit is, whether the new debtors could divide the heritage of their ancestor without notification to the creditor, and whether their failure so to do is fraudulent and produces a rescission of the division which took place between the heirs of Mr. Venancio Esteves y Serrano, and other creditors of the latter.

"Concluding: That Mrs. Isabel Alers and her son Mr. Segundo Esteves having mortgaged the undivided portion corresponding to them of the property left on the death of their ancestor, Mr. Venancio Esteves y Serrano, as property acquired during marriage and heritage, respectively, together with the other heirs, in favor of Mr. Félix Echevarría y Conti, it appears natural that a mortgage right limiting the ownership, or being a partition of the same, that the creditor should be considered as interested in the heritage before proceeding to a partition, because he was given a mortgage on the whole property inherited without definition, and therefore could be creditor of any part of the same, or because the notification involves the good faith of the partition, or, finally, although it may be said that such notification was not necessary, by virtue of the reasoning set down in article 1083 of the former Code, the same in observance as article 1050 of the present Code, because what is expressed in that same article would have been avoided; that is to say, that there should have been a claim and application for same to be declared rescinded on account of fraud or prejudice to rights.

"Concluding: That in accordance with article 1073 of the old Code, corresponding to article 1040 of the code at present in force, divisions may be rescinded for the same causes as the obligations (arising there-

under), and in accordance with article 1290 of the old Code, corresponding to article 1258 of the Revised Code, contracts may be rescinded, among other cases, when they are entered into by defrauding creditors, and the latter cannot collect in any other manner what is due to them.

''Concluding: That if for this reason the rescissory action is subsidiary, it clearly appears that Mrs. Isabel Alers presented herself in voluntary insolvency, and from the partition made on account of the death of Mr. Venancio Esteves y Serrano, it appears that no property exists other than that already adjudicated.

''Concluding: That the allegation made by the attorney for the plaintiffs on the oral trial, that the partition may be rescinded because the widow renounced the usufruct belonging to her widowhood, which should have been mortgaged, is not acceptable, because the said usufruct cannot be mortgaged, in accordance with paragraph 7 of article 108 of the *Legislación Hipotecaria,* and because it is questionable whether or not it may be renounced, as it is equivalent to a quota of alimony, and even though allowances of that nature do not permit of such renouncement, it always occurs that such a quota is granted exclusively for the benefit of the widow.

''Concluding: That it clearly appears from the evidence that there was no equity in the distribution of the heritage, the poorest lands being adjudicated to Mrs. Isabel Alers and Mr. Segundo Esteves, which is not just, with less reason when a mortgage encumbrance existed in favor of Mr. Félix Echevarría y Conti on the whole of the property inherited, which affected the undivided portion corresponding to the said Mrs. Isabel Alers and Mr. Segundo Esteves, her son.

''Concluding: That General Order No. 118 in its article 63 provides that costs shall always be taxed against the party whose claims have been entirely dismissed, we adjudge that we should declare and we do declare rescinded the partition made by the heirs of Mr. Venancio Esteves y Serrano, and which was approved by order of this court and entered in the protocols of the notary of this city, Mr. Alfredo Arnaldo y Sevilla, under instrument No. 89 of his protocol, on the 4th of March of the year 1901, in which an equitable distribution among the interested parties may be had; and the defendants are hereby condemned to again make the partition, with the costs of this action against Mrs. Monserrate, Mrs. Mercedes, and Mr. Segundo Esteves y Alers, and Mrs. Isabel Alers y Beauchamps, for herself and in representation of her daughter, Miss Rafaela Esteves y Alers.

"Thus by our judgment, definitely adjudging, we pronounce, command and sign."

From this judgment the defendants took an appeal to this court, which was filed herein on the 23d of February, 1904. Mr. Alfredo Arnaldo appeared for the appellants, and Mr. Eduardo Acuña for the appellees; afterwards, on the oral trial, the appellants were represented by Mr. Emilio García Cuervo.

The appellants base their appeal upon two grounds: First, that the creditor of one or more of the heirs is not a party who can move for a rescission of a partition of an estate duly made; and second, that if the creditor could take such proceedings it is necessary for him to prove that the rescission is the only legal means to obtain a reparation of the injury caused to him, which this creditor has failed to do. In support of these two propositions reference is made to sections 1000 and 1047 of the Civil Code in support of the first, and to section 1261 of the same Code in support of the second.

Section 1000 reads as follows:

"Section 1000. The private creditors of the heir cannot interfere with the operations of the estate, accepted by the latter under benefit of inventory, until the creditors of the same and the legatees have been paid; but they may demand the retention or the attachment of the remainder which may be left the heir."

It will be observed by the reading of this section that it refers exclusively to an inheritance which is accepted under inventory, and there is nothing apparent from the present record that the Estate of Venancio Esteves was so accepted by his heirs; in fact, as far as appears from the record, it was not so accepted, and consequently this section of the Code does not apply.

Section 1047 of the Civil Code reads as follows:

"Section 1047. A division, made with preterition of any of the

heirs, shall not be rescinded unless it be proven that there was bad faith or deceit on the part of other persons interested; but the latter shall be obliged to pay to the omitted person the proportionate share belonging to him.''

It will be observed that this section clearly and expressly refers to partitions in which one of the heirs has been excluded or omitted, which circumstance does not exist in the case at bar. All the heirs participated in the partition and it was only a creditor who was excluded. For this reason the section last quoted has no application to the case.

As to the second ground on which the appeal rests, it is necessary to quote section 1261 of the Civil Code, which reads as follows:

''Section 1261. The action for rescission is a subsidiary one; it may be enforced only when the person injured has no other legal remedy to obtain reparation for the injury.''

It certainly appears from the record that there was no other property available to the creditor out of which to collect his mortgage, except that which might be set aside to the debtors from the Estate of Venancio Esteves. It is true there was a small piece of property belonging to Mrs. Alers person ally, but it was only valued in the mortgage at $50, and besides, the record shows that she had instituted proceedings in the court of Aguadilla for acquittance and respite, presenting a list of creditors amounting to $52,655.80.

If the creditors were not able to collect the money due them by foreclosure of the mortgage, there is nothing to show that they would ever be able to get it in any other way.

From all these facts we are clearly convinced of the impossibility of a collection by the creditor outside of the proceeding instituted by him, or in other words, that the person injured has no other legal remedy to obtain a reparation for

the injury, so that this ground of the appeal must be held to be badly taken.

After carefully reviewing the judgment rendered by the court below, we believe that it is just and should be affirmed.

*Affirmed.*

Chief Justice Quiñones and Justices Hernández, Figueras and Wolf concurred.